(119 So. 644)

## SOVEREIGN CAMP, W. O. W., v. SCREWS.
### (6 Div. 132.)

Supreme Court of Alabama. Oct. 11, 1928.

Rehearing Denied Jan. 24, 1929.

600

SAYRE, J. Suit by appellee on a benefit certificate—insurance policy—issued by defendant, appellant, on the life of appellee's husband, Henry R. Screws. Errors assigned relate to rulings on the admission of evidence, the refusal of special charges requested by defendant, and the action of the court in overruling defendant's motion for a new trial, which will be considered, where statement is deemed necessary, in the order of their presentation in the brief for appellant.

█ The physician, who had examined the insured on his application for a benefit certificate, was allowed to testify for plaintiff that, refreshing his recollection by looking at the record made by him at the time of his examination, deceased was in good health at that time. Defendant's objection was overruled without error. The question sought to be raised at this point was elaborately considered in Acklen v. Hickman, 63 Ala. 494, 35 Am. Rep. 54, and the rule there stated has been consistently followed. Warten v. Black, 195 Ala. 102, 70 So. 758; L. & N. R. Co. v. Moorer, 195 Ala. 346, 70 So. 277; Russell v. Bush, 196 Ala. 321, 71 So. 397; Oden-Elliott Lbr. Co. v. Daniel-Gaddis Lbr. Co., 210 Ala. 584, 98 So. 730; Bailey v. Griffin, 211 Ala. 220, 100 So. 242; Polytinsky v. Sharpe, 211 Ala. 510, 100 So. 750; Central of Ga. R. Co. v. Wilson, 215 Ala. 616, 111 So. 901. Subsequently it was developed that the witness, though looking at the record, had no independent recollection of the state of the health of deceased at the time inquired about. No new objection was interposed. Even so, the testimony of the witness and the memorandum or record made by him were admissible. Acklen v. Hickman, supra; Polytinsky v. Sharpe, supra; Floyd v. Pugh, 201 Ala. 33, 77 So. 323; Deal v. Hubert, 209 Ala. 20, 95 So. 349; Alabama Trunk Co. v. Hauer, 214 Ala. 474, 108 So. 339. Many other adjudicated cases might be cited to both propositions. There was no error in this ruling.

█ Defendant introduced the deposition of Dr. Parker, who testified to facts which, if accepted by the jury, very clearly avoided the policy under several of defendant's special pleas. There was no attack upon Dr. Parker's professional standing or credibility as a witness, and for that reason there was no error in denying to defendant the right to show his high standing in the community.

█ That deceased had nephritis or kidney disease at the time of his examination was not by specific allegation of any one of the several special pleas made an issue in the cause; but that he had "some disease or ailment" which tended to shorten his life was alleged in plea 9, which went to the jury along with other pleas—whether properly so or not is not now in question. There was also evidence that deceased had suffered from kidney disease for 10 months before his death, which occurred about 16 months after the issuance of the benefit certificate upon which the suit was brought. And according to the expert testimony of Dr. Parker of Birmingham and Dr. Bass of Gadsden, the kidney affection and the aortic insufficiency or valvular disease or affection of the heart which caused the death of the insured had been produced by syphilis, from which deceased had suffered at an earlier time in his life. The question put to the examining physician and complained of in the fifth assignment of error, viz., "Doctor, if you had tested his urine and he had kidney trouble, would the urine tested have disclosed that?" and the answer, viz., "The test that I made showed no trouble with the urine"—though not strictly responsive—were allowed without error.

█ It may be that defendant, when preparing its bill of exceptions, inadvertently wrote that the witness, in response to the hypothetical question quoted in the seventh assignment of error, would answer in the affirmative, for a negative answer only would have been of

any service to defendant. But we cannot assume corrections of the bill of exception in order to establish error, for it is as easily possible that defendant at the time stated that the answer would be in the affirmative as that the inadvertence occurred afterwards in the preparation of the bill of exceptions; and, at any rate, we cannot undertake the doubtful and dangerous task of correcting the record after the fashion proposed by defendant, appellant. Appellants are bound by the terms of the bills of exceptions they bring here.

■ The court refused to allow defendant to show that money paid by plaintiff or her husband (insured) as premiums or assessments had been returned by defendant to plaintiff after his death. There was no error because there was no pleading under which this evidence should have been received. The general issue did not go to this point. If plaintiff was to be estopped, the estoppel should have been pleaded.

■■ Dr. J. C. Belding testified as a witness for plaintiff. He had made, to use his language, a "complete vertebral examination" of insured during the illness which preceded his death. Over defendant's objection, this witness was allowed to answer the question, whether he found any evidence of nephritis or Bright's disease, by saying that he had not. The stress of defendant's objection to this ruling is now laid upon the proposition that the witness was not properly permitted to state his opinion—his answer amounted to an opinion only—for the reason that he was no medical expert. Witness denied that he was a practicing physician. He gave that up, he said, because "it is common bunk." But he had been graduated from a medical college, had practiced medicine and surgery; but his practice at the time of the trial was "all hand work." He diagnosed heart and kidney diseases by "hand work." He asked his patients no questions; he preferred to learn their troubles of all sorts by "hand work." We are not required to pass upon the question of the value of the witness' opinions.· He had had the training and experience commonly necessary to the making of an expert and, in our judgment, was properly allowed to say that in his examination of insured he had found no evidence of the disease inquired about. His opinion may have been worth much or nothing—that was for the jury.

■ Defendant complains at length of that action of the trial court which refused, at a late hour of the day, to put over the submission of the cause to the jury until the morning to follow, in order that defendant might have an opportunity to produce a witness whose testimony, as defendant thought, had been made necessary by matters transpiring for the first time during the course of the trial. The court here cannot enter into a controversy of this sort for the purpose of locating the mere preponderating weight and propriety of the considerations which entered into the trial court's decision. The matter rested in the discretion of the court, and, in the absence of plain abuse, this court will not affirm error. On the record we cannot affirm reversible error.

■ The trial court in its oral charge instructed the jury as to the issues involved, explaining, briefly, but adequately as we think, the alleged cause of action and the gist of each of the pleas in the cause. Defendant excepted on the theory, as it then stated, that the court had not explained the law or the evidence in regard to the issues made by the different pleas. The court offered to wait while defendant prepared what it considered to be the necessary instructions, but did nothing more. Defendant excepted. No cause for reversal is here shown. Defendant's proper recourse, if it considered that the court had not adequately stated the issues to the jury, was to request special instructions. This court has never reversed a judgment on the ground here proposed and will not at this time inaugurate the practice suggested.

■ Plea 3 alleged that the warranty on which deceased procured his policy or benefit certificate had been breached, in that deceased had, at the time of issue, some disease of the heart which increased defendant's risk of loss. Defendant requested the general charge "under plea 3," which the court refused. And so as to the several other special pleas and upon the case as a whole. There was evidence for plaintiff—the evidence of Drs. Watts and Belding—which contradicted defendant's evidence that insured had one or more of the several diseases predicated in the several separate pleas. Upon no theory can error be affirmed on these rulings.

■ Defendant insists that its motion for a new trial, based, for one thing, upon the assertion that one or more of the several pleas had been proved by the great weight of the evidence, was erroneously overruled. This is the weakest point in plaintiff's case upon this appeal. But the court in consultation is of opinion that error should not be charged to the trial court in this ruling, the ground of this decision being stated in Cobb v. Malone, 92 Ala. 635, 9 So. 740, as follows:

"The decision of the trial court refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presump-. tions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust."

The court is not so clearly convinced, and for that reason denies defendant's argument for a reversal on the ground here stated.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.